### NEW YORK, N. H. & H. R. CO. v. DELAWARE, L. & W. R. CO. et al.

Circuit Court of Appeals, Second Circuit.
January 9, 1928.

No. 46.

**1. Shipping ☞42(7)—Owner warrants "seaworthiness" of car float demised.**

Owner, on demise of car float, warrants its "seaworthiness"; that is, its fitness for the traffic for which it is let.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy—Seaworthiness.]

**2. Shipping ☞54(2)—Where railroads and experts differ, court cannot say which of two methods of unloading car floats is right.**

Where railroads and experts differ as to safest way of unloading car floats, court can-

not say which is right, or whether the torque incident to the practice of one railroad is worse than the strain involved in the other's method.

**3. Shipping ☞54(2)—Owner of car float, exposed by charter to current unloading practices of port, is charged with notice thereof.**

Owner of car float, exposed by charter to current unloading practices of the port, unless plainly bad, is charged with notice of such practices.

**4. Shipping ☞58(2¾)—Evidence held to support conclusion that injury to car float was caused by structural weakness, rather than negligent unloading.**

Evidence that 16 year old car float, injured in unloading while in charterer's possession, had only four, instead of six, fore and aft trusses, and was badly designed, that sister float had failed under similar strain, that half of series had been made over to hold fewer cars, and that loads had been slowly increasing, *held* to support conclusion, in libel by owner against charterer, that injury was caused by structural weakness, rather than negligence in unloading.

**5. Shipping ☞58(2¾)—That car float, injured in unloading, had not failed before, held not conclusive that injury was caused by negligent unloading, rather than structural weakness.**

That car float, injured while unloading, had not failed before, *held* not conclusive that injury was caused by negligence in unloading, rather than structural weakness, where sister float had failed under similar strain, and half of series had been made over to hold fewer cars.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in personam in admiralty by the New York, New Haven & Hartford Railroad Company against the Delaware, Lackawanna & Western Railroad Company, which impleaded the Long Island Railroad Company, for injury to a car float while in the first-named respondent's possession as charterer. From a decree of dismissal, libelant appeals. Affirmed.

Charles M. Sheafe, Jr., of New York City (James T. Kilbreth, of New York City, of counsel), for New York, New Haven & Hartford R. Co.

John E. Morrissey, of New York City, for Delaware, Lackawanna & Western R. Co.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for Long Island R. Co.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM. [1] We assume arguendo that there was a covenant to return the float in good condition wear and tear excepted. We assume, likewise for argument only,

that this imposed an unconditional liability on the charterer, unless the float was destroyed without its fault. Nevertheless we do not understand the libelant even to argue that the owner does not on a demise warrant a float's seaworthiness; that is, her fitness for the traffic for which she is let. That is, of course, the rule.

[2, 3] So viewed, the question really comes to whether the way in which the float was unloaded was negligent. The evidence is that the railroads differ about this. The New Haven and the New York Central adopt one method, and the Delaware, Lackawanna & Western and Long Island adopt that used here. The practice of the other roads does not very clearly appear, but it is apparent that there is a difference between persons expert in the calling as to what is the safest way. We are in no position to say which is right, or indeed whether there is any right or wrong way at all. No doubt there are cases in which we interpose our own views, when the practices of experts differ. This is not one; we cannot say whether the torque of the New Haven practice is worse than the strain of the Long Island. The charter exposed the float to current practices of the port unless plainly bad, and the libelant was charged with notice of what these were.

[4, 5] The conclusion from her failure that she was unfit is fortified by her structural weakness. Instead of six fore and aft trusses, she had four. Certainly it was permissible for the District Judge to find that she had been badly designed, even from the outset. The fact that she had not failed before is not conclusive. Her sister, No. 47, had failed under a similar strain, and half the series had been made over to hold only two strings of cars. Besides, after 16 years, nobody can say what weaknesses she had developed. The loads had all the while been slowly increasing, and for these she had not originally been designed.

We can find nothing in the record which justifies a reversal.

Decree affirmed.